Pearson, J.
The question is one of serious difficulty and has been held under advisement. The cases upon the subject are numerous. Many of them turn upon very nice distinctions ; and in some, the Judges were not able to agree. After the most anxious consideration, I have come to the conclusion, that the action can be maintained, ^both upon authority and principle. -
“One should use his own, so as not to injure another;'’ “That, which you do by another, you do yourself,” — are two maxims, from which results the general rule, when one procures work to be done, if a' third person is injured by the negligence or want of skill of the persons employed, the person, for whose benefit, and at whose instance the ^vvork is done, must make compensation. The party injured may sue the person, whose negligence or want of skill was the immediate cause of the injury. So may the employer, if he is compelled to pay the damage. But, if that person is innocent, the loss must fall either upon the party injured, or upon the party, who set the work in motion and for whose benefit it was done. Can there be a doubt, upon which of the two it ought to fall? The rule is founded upon justice, and exceptions to it should be allowed with caution, and only to the extent called for by public convenience.
The rule is not confined to domestic servants, but has a more extended operation. All such as act for — do the work of — serve, another, are in contemplation of law his servants, and fall under the rule. The captain and crew of a vessel or steamboat, engineer and hands of a rail road, or of a factory, drivers of stages, cashier and ofii« cers of banks, the deputies and other officers of a sheriff, are familiar instances. It makes no difference, whether these servants are paid by the job, or by the year, or the *556 day. A third person has no concern with the terms of their private agreement. The loss to him is the same, let the agreement be either way. Nor does it make any difference, whether the person, for whom the work is done, be present or absent: if he expects to be absent, the more care should be used in making the selection* Nor is any distinction taken, when the work is of such a nature, that the owner cannot be expected to do it himself and must’’ necessarily employ others to do it. In all these cases, the person, for whom the work is done, is liable, if a third person be injured, y, There is, however, an exception to the generality of the rule, made necessary by public convenience and general usage and when the reason of the rule does not so fully apply. The question is, whether this case is within the exception..
"When one enters a rail road car, the engineer and hands serve him — do work for him — carry him and his goods. But he is not liable for their negligence or want of skill. So far from it,, the company is liable to him. ^ This is an exception to the rule, for two reasons : he did not make the selection, and although in a large sense they are his servants, yet they are the servants of the company. It carries on a distinct, independent business, and is liable for their negligence or want of skill. The reason of the rule fails; and public convenience demands, that the party injured should be content with his remedy against the' company or the individual whose fault caused the injury.' If passengers were liable, no one would travel upon rail roads. This is the principle, upon which the exception is based. It extends to an infinite variety of cases. The one given is “ex grege” — it includes all who carry on independent trades or callings recognised as such by law or’ by common usage. If one sends his horse to a smith’s shop, and by negligence he is permitted to injure a third' person, the owner of the shop is liable, but the owner of the horse is not. So, if one sends to a person, whose' *557 calling is to keep horses, carriages and drivers to hire, and a third person is injured by the negligence of the driver, viciousness of the horse, or insufficiency of the carriage, he must look to the person, who, in his calling, furnished the driver, horse, or carriage. The person who hired them did not have the selection ; and public convenience requires, that he shall not be vexed for the fault of another, although the work was done for his benefit, as there is anotheiv^o whom the party injured may have recourse. So; if ave'ssel takes in a pilot, not being compelled to do so, the owner is liable, but if a vessel is compelled to take in a pilot, the owner is not liable to a third person for his fault, because there is no power of selection, and the party injured has a sufficient remedy against the pilot. This exception, however, was not yielded without much opposition. In England, it was not quite settled until the statute George 4th, excepting ship owners from liability in such cases; and, in this State, in the case of Harvey v. Pike, N. C. Term Rep. 82, it was held, that the owner of a ship is liable upon the bill of lading to the shipper, whose goods are-damaged by the unskilfulness of the pilot. But it is left open, whether a ship owner be liable to third persons. This shows the caution and reluctance of the Courts in admitting exceptions toa rule, so obviously founded upon justice. Such is the rule, and such the exception as now settled, but the exception was not permitted to be as large, as I have laid it down until after many and severe struggles. One of the most memorable occurred in the case of Laugher v. Pointer, 5 B. & C. 547. The Judges of the King’s bench were equally divided. The case was then argued before the twelve Judges. They could not agree, and the judgment? was then delivered by the four Judges of the King’s bench. Littledale and Abbott, C. J., being with the defendant, IIolroyd and Bailey, with the plaintiff. The argument, as may well be supposed, was exhausted on both sides, *558 and it was left as an unsettled question. The case was, the defendant, having a carriage in London, sent to a job-man, who kept horses, carriages and drivers to hire, in the usual way., for a pair of horses. The job-man sent the horses and a driver. The plaintiff was injured by the negligence of the driver, and the question was, whether the defendant was liable., Littledale held, that he was not, and argued, that the case fell under the exception to the general rule, because the defendant did not select the driver, and because the plaintiff had his remedy against the job man, “who carried on a separate, independent calling, recognised by common usage.” Holroyd and Bailey held, that the case fell under the general rule, that the defendant had made the selection ; for, he allowed the job-man, as his agent, to select the driver, which was the the same as if he had made the selection himself, and if the plaintiff had a remedy against the job-man, it was no reason why ho should not also have a remedy against the defendant, for whom the work was done, and let him look to the job man. They assume, that, if the job man had been the driver, instead of the person sent by him, the case would have been clear for the plaintiff; for, then, there would have been no other person to sue, save the person whose fault caused the injury, and the defendant, for whose benefit the work was done, and insist, that his sending a driver, instead of coming himself, made no difference. Abbott concludes the argument, contending, that the case was the same, as if the job man had also furnished the carriage, which would be the ordinary case of one, riding in a stage or hack. He insists, that the job man exercised a separate calling and was liable for the negligence of his servant, the driver; that he was as able to pay the damage and as easily found out as the hirer, and there was no reason, why the hirer should also be liable. Public convenience wras against it. He does not answer the supposed case, had the job man been the *559 driver; and it is worthy of remark, that in all the cases where an exception is made, the agent was the servant of the person with whom the contract was made, and not that person himself; and there is no intimation, how the Judges thought that circumstance would alter the case. I do not lay stress upon it, as it does not seem to me t® make much difference, whether the person, who carries on a distinct trade, does the work himself or has it done by his servants. But in the next case, which will be referred to, which is the strongest on the side of the exception, and has been said, “to carry it to a great extent,” the decision is put upon the fact, that the work was done^ not by the person, with whom the contract was made, but by Ms servant.
Laugher v. Pointer, was followed by the case of Quarman v. Burnett, in the Court of Exchequer, 6 M. & W. 490. The facts were almost precisely the same ; and Parke. B. says, the Court is compelled to decide the question left unsettled in that case. The decision is for the defendant, concurring with the opinion of Littledalb and Abbott. He says, “no other person than the master can be liable, on the simple ground, that the servant is the servant of another and his act the act of another ; consequently, a third person, entering into a contract with the master, which does not raise the relation of master and servant at all, is not thereby rendered liable and concludes, that when the job man sends the driver, the .employer is not liable, for the driver is the servant of the job-man, not of the employer, and that the general rule is too broad, and the case fails within the exception. This case established the exception to this extent: — when the work is done by the servant of another, who exercises a distinct and independent calling, the laiteris liable for the fault of his servant, and not the person, for whom the work is done, because a contract with the master does not establish the relation of master and .servant between *560 the employer and the servant of the contractor. For instance, a contract with the job-man does not make his servant the servant of the employer. A contract with a rail road company does not make the engineer and hands the servants of the traveller. They are selected and paid by the company and its liability for their acts is a sufficient security to third persons, without subjecting the passengers, which would be a great public inconvenience.
The next is the case of Repson v. Cebitt, 9 M. & W. 710. The owner of a house employed a builder to do-certain repairs. He made a sub-contract with a gas-fitter. The gas-fitter, or his servant, in the erection of the gas-fittings, caused mischief by neglect. It was held, that the owner of the house was liable, upon the authority of Burk v. Stinman, (which is cited below.) but that the builder was not liable, because the gas-fitter was carrying on an independent trade and was not the servant of the builder, but wrns doing the work of the owner of the house.
The next was the case ol Milligan v. Wedge, 12 A. &. E 737. A butcher, having bought a steer, employed a licensed drover in London to drive the animal to his slaughter pen. The drover sent his servant to do the work. Injury was done to the plaintiff by the negligence of the servant. Held, that the butcher was not liable j fo.r the servant was the servant of the driver, who carried on a separate calling recognised by law. The plaintiff’s remedy was against the drover.
Then came the case of Martin v. Tenpuly, 4 A. & E.. N. S. 45 E. C. L. R. 298, decided in 1843. The defendant owned two barges, which he wished to remove from one place to another on the river Thames. His foreman employed two freemen of the company of “Watermen,” &c , and paid them by the job. In moving the barges, injury was done to the plaintiff’s boat by their negligence. The defendant’s counsel admitted the general rule* but *561 urged, that he came within the exception, established by Quarman v. Burnett, and Milligan v. Wedge; for, the freemen of the company of “Watermen,” &c., have a distinct calling recognised by law, and the defendant was obliged to employ a member of that company by statute, George 4, so his choice of selection was limited. And without reference to the statute, it was argued, that it was not a case of master and servant, but of an indepen• dent contract to do work within the principle of those two cases Judgment was given for the plaintiff, all of the Judges holding, that the general rule applied. Denman distinguished it from the case of Milligan v. Wedge, because the drover was pursuing a separate business, and his servant caused the injury. “In the present case, it was otherwise,” says his Lordship. He does not pursue the argument, but leaves it to be inferred, that his meaning was, the two freemen were the servants of the d'e fendant; for, if not, whose servants were they ? Patterson says, “the freemen were the servants of the defendant. In Quarman v. Burnett, it was held, that where a man hires another man’s servant, he does not become the servant of the person so hiring. That case certainly carried the exception a great way. But, then, the servant was ordinarily in the employment of one, who hired horses along with the driver, which distinguishes it from this case.” Coleridge put the case under the general rule , thinking clearly it did not come under the exception. If a man be employed by the job to move a barge from one place to another, and injury is done by his negligence, the owner of the barge is liable. I confess, I cannot distinguish that case from the present, where a man was employed by the job to move a house from one place to another. It cannot be said, that Gaskill was the servant of another, who was liable, which is the principle in the case of Quarman v. Burnett. Nor can it be said, that he was exercising a separate and independent calling, re *562 cognised by law or common usage — the principle of Milligan v. Wedge. The case does not state, that there is such a separate calling, as that of a house mover, and, if so, that Gaskill was of that trade.
Upon authority*, therefore, I think, the case is against the defendant, and it is also upon principle. Why take_) this case out of the general rule ? He selected his rnan; the work was done for his benefit; and he can be indemnified by the person he employed, unless he be insolvent; and if so, it.was his folly to employ an insolvent man, and the loss should not be shifted off upon an innocent third person. There is no principle of public convenience,, ■which calls for the exception. If, instead of employing Gaskill by the job, the defendant had given him f 10 to superintend: and had given him fifty hands to work ■under him, it must be admitted, the defendant would then have been liable. Does it make any difference to the plaintiff, how the defendant chose to make his bargain? Is the injury to him less ? Then, how can his right be affected by it ?
There is another class of cases, to which it is proper to refer. Not because I consider them directly in point, but because they show clearly within what narrow limits the exception is confined. In Burk v. Stinman, 1 B. and Pul. 404, the defendant, having purchased a house on the road side, contracted with a surveyor to put it in repair for a stated sum. The surveyor contracted with a carpenter to do the whole work. He made a contract with a bricklayer to do the brick work And the brick-layer contracted with a lime burner to furnish a quantity of lime, which was delivered by the servant of the latter, by laying it on the road near the house. The plaintiff ran on the lime and upset, and was much injured. Held, that the defendant was liable for the injury. The Court lays down the general rule and the exception, but this is made an exception to the exception, because the property of the defendant was *563 fixed and permanent; and he was, therefore, liable for the acts of the servants of all such, as he employed to do work upon, near, or in respect to, the property, although the person contracted with carried on a distinct calling. In Laugher v. Pointer, Littledale takes a distinction between the owner of fixed and of moveable propert}^. This case has been followed by many others, both in England and the United States; and the exception to the exception against the owner of fixed property, is fully established.
In this case, the defendant was the owner of the lot, to which the house was to be removed. The work was centainly to be done “in respect to that property,” by putting a house on it, and the hole in the street was near the lot (150 yards.) It is not stated in Burk v. Stinman, how near the lime was laid to the defendant’s premises. I infer, that it was within a few yards, and am inclined to think, that the principle of that case is confined to acts done on the land, or so near to it, that the owner, if present, as he ought to be, must necessarily be aware of them. One hundred and fifty yards seems to be too far, unless the nature of the work makes a difference. Moving a house is a more serious job, and calls for more caution, than hauling a load of lime or timber. I prefer to put the case, not as coming within the exception to the exception, but as coming under the general rule — not being brought within the exception by any decided case in the demand of public convenience.
Nash, J. Concurred.